IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MATTHEW ACKER,                              : | |
|                       Plaintiff,                     : | |
| v.                                          : | CIVIL ACTION |
| RAY ANGELINI, INC. and                      : | |
| AJA SKIES THE LIMIT, INC.,                  : | No. 14-0019 |
|                       Defendants,                    : | |
| v.                                          : | |
| DDM STEEL CONSTRUCTION, LLC,                : | |
| FRANK LUBISKY d/b/a UNION ROOFING,          : | |
| and UNION ROOFING CONTRACTORS,              : | |
| INC., d/b/a UNION ROOFING,                  : | |
|                       Third Party Defendants.        : | |

**MCHUGH, J.**                                                                  **AUGUST 16, 2016**

**MEMORANDUM**

This is a straightforward case arising out of a construction site accident, brought by a Pennsylvania worker who was injured on a public works project in New Jersey. The general contractor responsible for the project is a New Jersey corporation, and the roofing firm that employed Plaintiff was retained under a subcontract specifically calling for the application of New Jersey law. Despite this Jersey nexus, these two parties now seek to cross back over the Delaware River and win summary judgment through the application of Pennsylvania law, claiming employer immunity. Because I conclude that New Jersey law applies, both Motions will be denied.

**I.    Facts**

The controlling issue is choice of law, and for that reason, the material facts involve the domicile of the parties, the relationship between them, and their respective relationships with the interested states. Defendant Ray Angelini, Inc. (RAI) is a New Jersey Corporation that

1

contracted with the County of Salem, New Jersey to act as the general contractor for the construction of a county office complex.  RAI then subcontracted with "Union Roofing,"[1] a Pennsylvania corporation, to provide labor, materials, tools, and equipment to complete the roofing portions of the project.[2]  Plaintiff Matthew Acker, a Pennsylvania citizen, was an employee of Union Roofing.  While working on the project in March 2012, Acker fell through decking on the roof and sustained serious injuries.  He received benefits under the Pennsylvania workers' compensation statute through Union Roofing, his direct employer, and its workers compensation insurer.  He also filed suit against RAI, as general contractor, and one of the subcontractors involved in construction of the roof decking.  RAI in turn joined Plaintiff's employer under an indemnity clause in its subcontract.  Both RAI and Union Roofing claim immunity as Plaintiff's employer under Pennsylvania law—RAI as a "statutory employer" and Union Roofing as a direct employer.

## II. Discussion

### A. *Controlling Standard*

These Motions are governed by the well-established test set forth in Federal Rule of Civil Procedure 56(a), as amplified by *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Because no material fact is in dispute, the issues are purely ones of law.

### B. *RAI's Motion for Summary Judgment – Statutory Employer Defense*

RAI moves for summary judgment on the ground that it was Plaintiff's "statutory employer" and is therefore entitled to immunity from tort claims for work-related injuries under

---

[1] At the outset of this litigation, there was confusion about which specific entity employed the Plaintiff.  In March 2014, RAI's Motion for Leave to File an Amended Joinder Complaint to add "Frank Lubisky d/b/a Union Roofing" and "Union Roofing Contractors, Inc. d/b/a/ Union Roofing" (hereinafter referred to jointly as "Union Roofing") was granted.

[2] RAI also subcontracted with DDM Steel Construction, LLC to perform work on steel portions of the project, and DDM in turn subcontracted its work to AJA Skies the Limit, Inc.  These Defendants are not involved in the pending Motions.

Pennsylvania's Workers' Compensation Act. A statutory employer is one who has secondary liability for payment of compensation to an injured worker if the direct employer does not meet its obligation under Pennsylvania law to do so, and who therefore enjoys a concomitant immunity from liability in tort. 77 Pa. Stat. § 462; *Patton v. Worthington Assocs., Inc.*, 625 Pa. 1, 4–5, 89 A.3d 643, 645 (2014). Plaintiff does not contest that RAI would meet Pennsylvania's legal definition of a statutory employer, but he argues that the matter is controlled by New Jersey law, which does not confer immunity on a statutory employer on facts such as these.[3]

A federal court exercising diversity jurisdiction must apply the choice of law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Pennsylvania uses a two-part[4] test when determining which state's laws apply in a conflict of laws problem. First, a court must determine if there is an "actual or real conflict between the potentially applicable laws," such that the application of each state's respective substantive law produces a contrary result. *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir. 2007). In the first instance, the question is whether the laws of the competing jurisdictions would treat the matter differently.

Facially, a conflict exists in this case. Under Pennsylvania law, because a general contractor stands behind an injured worker's direct employer with a contingent responsibility to provide benefits, the general contractor is entitled to immunity from suit by the injured worker as

---

[3] As a threshold matter, RAI argues that Plaintiff has waived application of New Jersey law before removal by not providing notice in his pleadings that he intended to rely upon it. 42 Pa. Cons. Stat. § 5327(a). I view this as a matter of procedure, not substance. *See Sheard v. J. J. Deluca Co.*, 92 A.3d 68, 77–78 (Pa. Super. Ct. 2014). Having no applicability in a federal court under the *Erie* doctrine, I also note that Section 5327 provides for notice in the pleadings or through other unspecified "reasonable written notice." In my view, Plaintiff's response to the Motion would qualify as reasonable notice, because reasonableness must necessarily take into account the ease or difficulty with which the law of another jurisdiction can be determined. In international cases, for example, proving foreign law might involve the need to call expert witnesses from abroad. Here, notwithstanding what some would say are profound cultural and linguistic differences between "Joisey" and Pennsylvania, all that is required to analyze the issue is access to Westlaw or LexisNexis. In a regional economy like the Delaware Valley, such choice of law issues should not be cause for surprise.

[4] I agree with my colleague Judge Dalzell that while this approach has been labeled a two-step test by courts, it in fact contemplates three distinct steps that must be taken when analyzing a true conflict between competing states' laws. *See Broederdorf v. Bacheler*, 129 F. Supp. 3d 182, 193 n.2 (E.D. Pa. 2015).

3

the "statutory employer" even where it is not actually called upon to provide compensation. *Patton*, 625 Pa. at 4–5, 89 A.3d at 645; 77 Pa. Stat. § 462.  New Jersey has made a different policy choice.  Unless the general contractor is in fact required to step into the shoes of a subcontracting employer and pay benefits, an injured worker retains the right to sue the general contractor for a full measure of third-party damages.  *Wilson v. Faull*, 141 A.2d 768, 772–73 (N.J. 1958); N.J. Stat. Ann. § 34:15-40.

But as my colleague Judge Baylson (sitting by designation) pointed out in *Hammersmith*, there is some confusion about what constitutes a "true" conflict under Pennsylvania law. *Hammersmith*, 480 F.3d at 229.  Even where differences exist, a closer reading of Pennsylvania law, and one that is more faithful to its seminal choice of law cases, *Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 203 A.2d 796 (1964), and *Cipolla v. Shaposka*, 439 Pa. 563, 267 A.2d 854 (1970), requires a court to further classify the conflict by inquiring whether the *interests* of one jurisdiction would be frustrated by application of the other state's law.  *Id.* at 230.  Although Pennsylvania and New Jersey would approach the issue differently, I see no true conflict in this case because there is no policy interest of Pennsylvania that would be frustrated by the application of New Jersey law.  Pennsylvania undeniably has an interest in seeing that one of its injured citizens is compensated.  That interest is fundamental under Pennsylvania law, embodied in Article III, Section 18 of its Constitution, which provides that except for the specific purpose of establishing a system of workers' compensation, the legislature may not limit damages. Pennsylvania would have no interest in limiting the liability of a New Jersey corporation for an accident that happened in New Jersey, the consequences of which are borne by a Pennsylvania citizen in Pennsylvania.  Moreover, the Pennsylvania Workers' Compensation Act creates a right of subrogation on the part of an employer responsible for payment of benefits.  77 Pa. Cons. Stat.

4

§ 671. Pennsylvania would have no interest in limiting the ability of a Pennsylvania employer to enforce that right of subrogation against a New Jersey corporation for an accident that happened in New Jersey. Granted, as discussed below, on the particular facts of this case, if RAI lacks immunity as statutory employer, its liability might flow back to Plaintiff's employer by operation of contract. But that specific outcome here would not frustrate any public policy of Pennsylvania, because its Workers' Compensation Act specifically permits a direct employer to waive immunity by signing an indemnity agreement, 77 Pa. Cons. Stat. § 481(b), as Union Roofing did here.

RAI argues that it had a contingent liability to pay benefits under the Pennsylvania statute, thereby entitling it to the protection of Pennsylvania law. But it cites no authority for the proposition that Pennsylvania could somehow force a New Jersey general contractor to pay benefits under the Pennsylvania statute for an accident that happened in New Jersey. More to the point, in considering the contingent exposure of general contractors obligated to serve as secondary guarantors of compensation, New Jersey did not find that burden sufficient to justify a grant of immunity. *See Boehm v. Witte*, 231 A.2d 240, 245 (N.J. Super. Ct. Law Div. 1967).

Even if I assume a true conflict and proceed to the next step in the analysis, a weighing of the interests of the two states, New Jersey has the most significant relationship to this dispute. This analysis requires more than a mere counting of contacts; it requires a qualitative analysis of the policies and interests underlying each state's approach to the issue. *Hammersmith*, 480 F.3d at 231. New Jersey's interest in regulating the conduct of contractors performing public works projects within its borders is self-evident. In an analogous case, *Le-June v. Bliss-Salem, Inc.,* 85 F.3d 1069 (3d Cir. 1996), the Court of Appeals applied Pennsylvania choice of law principles to a case brought by a Pennsylvanian for injuries suffered at a Delaware work site and held that

Delaware law applied. Although the site of an accident is no longer controlling, where it is not fortuitous, and where the negligent conduct at issue occurred within a state, that state's interest in "regulating purposeful economic activity within its borders" would be impaired by application of another state's law. *Id.* at 1072.

Such regulation is particularly important in the context of industries such as construction, which bring with them an inherent risk of injury. Although this case does not involve a fatality, according to statistics maintained by the Occupational Safety and Health Administration (OSHA), in 2014, 20.5% of private industry fatalities were in construction, and of these fatalities, nearly 40% involved falls. U.S. Dep't of Labor, Occupational Safety & Health Admin., Commonly Used Statistics, https://www.osha.gov/oshstats/commonstats.html (last visited Aug. 14, 2016). In most instances, unless there is a construction manager or "owner's representative" on a project, it is the general contractor, as the party in privity with the owner, that has the greatest power of supervision over practices at a job site, including safety practices such as fall protection. In that regard, New Jersey has its own Division of Public Safety and Occupational Health responsible for promulgating and enforcing safety regulations at job sites.[5]

By retaining the third-party tort liability of general contractors where they are not obligated to step into the shoes of a direct employer, New Jersey is making a deliberate policy choice that should not be lightly disturbed, particularly where the rule in question is being applied to a New Jersey corporation.

---

[5] Finding that the "safety and health of public employees in the workplace is of primary public concern," the New Jersey legislature promulgated the New Jersey Public Employees' Occupational Safety and Health Act (PEOSH). N.J. Stat. Ann. §§ 34:6A-25 *et seq.*; N.J. Stat. Ann. § 34:6A-26. PEOSH codified a statewide policy to ensure the safety of all New Jersey work environments. *Id.* The Act tasks the state's Department of Labor with developing and enforcing a plan for statewide safety standards. N.J. Stat. Ann. § 34:6A-29. In practice, New Jersey largely defers to OSHA's federal worksite regulations, but PEOSH specifies that "[w]here no federal standards are applicable or where standards more stringent than the federal standards are deemed advisable, the commissioner shall ... provide for the development of State standards." N.J. Stat. Ann. § 34:6A-30; *see also* U.S. Dep't of Labor, Occupational Safety & Health Admin., New Jersey State Plan, https://www.osha.gov/dcsp/osp/stateprogs/new_jersey.html (last visited Aug. 14, 2016).

The New Jersey Supreme Court cases cited by RAI, *Eger v. E.I. Du Pont DeNemours Co.*, 539 A.2d 1213, 1214 (N.J. 1988), and *Wilson*, 141 A.2d at 771, do not weigh in favor of applying Pennsylvania law.  First, these cases were decided under New Jersey's conflict of laws principles, which differ somewhat from Pennsylvania's.  More importantly, in each of those cases, the court declined to apply New Jersey law principally   because the incident giving rise to liability occurred outside of New Jersey.  Although the location (the common law *lexi loci*) of the incident is no longer dispositive, *Hammersmith*, 480 F.3d at 224, it is an important factor in this case because the issue of workers' compensation is so intertwined with state workplace regulation.  Plaintiff correctly points out that *Eger* and *Wilson* have been distinguished by later New Jersey courts on that basis.  *See Salinas v. Doe*, No. 10-3244, 2010 WL 3724523, at *11 (D.N.J. Sept. 14, 2010) ("Consequentially, in this case New Jersey has an additional interest that neither Wilson nor Eger analyzed—i.e., its interest in regulating the conduct and welfare of employers and employees operating within its borders."); *see also Brogna v. United States*, No. 05-4839, 2007 WL 2572377, at *5 (D.N.J. Aug. 31, 2007) ("Insofar as general contractors located in New Jersey negotiate contracts and make decisions based on their anticipated liability exposure, New Jersey has an interest in ensuring that those contractors are subject to the liability scheme that they expect to apply.").  Because I find that New Jersey law applies, and under its law RAI is not entitled to a "statutory employer" immunity defense, RAI's Motion will be denied.

    C.  *Union Roofing's Motion for Summary Judgment*

        1. <u>Indemnification Clause</u>

RAI's Joinder Complaint alleges that Union Roofing was negligent and seeks indemnification from Union Roofing in the event that RAI is found liable for Plaintiff's injuries.

The basis of this claim for indemnification is a clause in the Union Roofing subcontract, which reads:

> Indemnification. (a) Subcontractor shall indemnify and hold Contractor and Owner harmless from and against all claims and causes of action for damages and expenses of every kind of character (including cost of suit and reasonable attorneys fees) asserted against Contractor or Owner, their subsidiaries and affiliated companies, agents, servants and employees, by any firm, person, corporation or other legal entity arising:
> (1) from injury to or death of any employees of the Subcontractor.
> (2) from injury to or death of any person or damage to any property arising in any manner while Subcontractor has control and use of the premises in question.
> (3) from injury to or death of any person to any property occurring as a result of the concurrent negligence, strict liability, breach of express or implied warranty, tortuous acts, conduct or conditions or any combination thereof by: (i) Contractor, its agents, servants and employees and Subcontractor, its agents, servants and employees or any other person, corporation or legal entity for which Subcontractor in law would otherwise be liable, or (ii) Contractor, its agents, servants and employees and Subcontractor, its agents, servants and employees or any other person, corporation or legal entity for which Subcontractor in law would otherwise be liable and any third person, corporation or legal entity.

Union Roofing Subcontract at ¶ 18.  Union Roofing argues that, as a matter of Pennsylvania workers' compensation law, this indemnification clause is too vague to be enforceable, and in the absence of a binding contract term, Union Roofing cannot be compelled to indemnify RAI.

As a threshold issue, Union argues that RAI's claims against it must be dismissed because the Union Roofing Subcontract provides that all disputes arising out of the contract must first be submitted to mediation before seeking court intervention.  But even in the face of an alternative dispute resolution clause, a party may waive its right through its litigation conduct. *Zimmer v. CooperNeff Advisors, Inc.*, 523 F.3d 224, 231 (3d Cir. 2008).  In the related context of arbitration, a court must determine whether the opposing party has been prejudiced by the delay in seeking arbitration, giving consideration to factors like the timeliness of the motion to arbitrate, the extent to which the party seeking to arbitrate has engaged in motion practice, and

the extent to which the parties have engaged in discovery. *In re Pharmacy Benefit Managers Antitrust Litig.*, 700 F.3d 109, 117–18 (3d Cir. 2012). Similar principles would certainly apply to mediation. In this case, Union did not raise this argument at the Rule 16 Conference, when the Court invested time and attention in creating a Case Management Order, or in its Answer. From a review of the record it appears that Union Roofing raised the defense for the first time more than a year after being served with the Third Party Complaint. The parties have completed discovery, and have availed themselves of the service of a federal magistrate judge for extensive settlement discussions. Indeed, resolution of these Motions was delayed to provide the parties with the opportunity to pursue settlement. Given that record, I find that the parties would be prejudiced by further delay.

Turning to the merits, Union argues that the subcontract contains a clause specifying that any disputes would be brought in New Jersey. However, if a party "does not interpose timely and sufficient objection to the venue," a district court may continue to exercise its jurisdiction over a case. 28 U.S.C. § 1406(b). Union's lack of timeliness in raising this issue also persuades me to reject this claim. I will therefore proceed to analyze the enforceability of the provision under the governing law.

The subcontract between Union Roofing and RAI contains a choice of law provision specifying that it "shall be governed by and construed in accordance with the laws of New Jersey, without reference to its conflict of laws principles." Union Roofing Subcontract at ¶ 31(h). Choice of law agreements are generally enforced by Pennsylvania courts. *Gay v. CreditInform*, 511 F.3d 369, 389 (3d Cir. 2007). It has adopted Section 187 of the Restatement (Second) Conflict of Laws, which provides that a choice of law provision in a contract will be given effect unless: (1) the state whose law is specified in the contract has no substantial

relationship with the parties; or (2) the application of the state law chosen by the parties would be contrary to the public policy of the state having a materially greater interest. *Kruzits v. Okuma Mach. Tool, Inc. v. Visco*, 85 F.3d 1069, 55 (3d Cir. 1994).

Union first argues that the choice of law clause should not be enforced because it would undermine Pennsylvania public policy, but the case on which it relies, *Finney v. CSX Transp., Inc.*, No. 09-3040, 2009 WL 3719382, at *2 (E.D. Pa. Nov. 5, 2009), is distinguishable, both because it involved an accident that occurred in Pennsylvania, and because the indemnity provision in question would have been unenforceable under Pennsylvania law.  More importantly, in this case, New Jersey has a substantial relationship with RAI, and because it has an interest in enforcing its own laws within its borders as set forth above, it certainly has an interest at least equal to that of Pennsylvania.

But applying the contract's choice of law provision is not essential to my ruling, because I find that under either state's law the indemnification clause is valid and binding.  As noted above, the Pennsylvania Workers' Compensation Act provides that an injured employee may bring an action against a third party that caused his injuries, but his employer shall not be liable to the third party for damages or indemnity *unless* such liability is expressly provided for in a written contract.  77 Pa. Cons. Stat. § 481(b).  The particular requirement of Pennsylvania law in a case such as this one is that the intent to indemnify against claims *by employees* of the alleged indemnitor must clearly appear in the terms of the agreement.  *Bester v. Essex Crane Rental Corp.,* 619 A.2d 304, 306–07 (Pa. Super. Ct. 1993), *appeal denied*, 539 Pa. 641, 651 A.2d 530 (1994); *Snare v. Ebensburg Power Co.*, 637 A.2d 296, 299 (Pa. Super. Ct. 1993), *appeal denied,* 538 Pa. 627, 646 A.2d 1181 (1994).

New Jersey law similarly protects employers from having to indemnify a third party sued by its own employees, unless the employer and the third party explicitly provide for such indemnification in a contract. *Ramos v. Browning Ferris Indus. of S. Jersey, Inc.*, 510 A.2d 1152, 1159 (N.J. 1986). However, New Jersey requires a slightly different form of heightened specificity in an indemnification clause—the language must make it clear that the clause expressly covers injuries caused in part by *the indemnitee's own negligence. Id.*; *see also Magazzu v. Volmar Servs., Inc.*, No. 08-2078, 2009 WL 5194396, at *5 (D.N.J. Dec. 21, 2009) (stating that New Jersey's "prohibition against broad indemnification clauses involving employers focuses not on whether the clause expressly covers claims asserted by employees but whether the clause expressly declares the employer's intention to indemnify the third party for its own negligence"). Such an indemnification clause would be enforceable, so long as the damages in question were not caused by the indemnitee's "sole negligence." *See* N.J. Stat. Ann. § 2A:40A-1.

The clause at issue here contained language satisfying the heightened specificity requirements of both states. The first sub-section of the contract clause at issue, paragraph 18(a)(1), specifically requires indemnification for claims arising from "injury to … any employees of the Subcontractor," which is exactly the type of express language required by Pennsylvania law.[6] The third sub-section, paragraph 18(a)(3), requires indemnification for injuries "occurring as a result of the concurrent negligence" of RAI and Union Roofing, or RAI, Union Roofing, and a third party. This demonstrates that the parties specifically contemplated indemnification for damages caused in part by RAI's own negligence. Such language satisfies

---

[6] This was also the language missing from the agreement in *Finney*, 2009 WL 3719382, which rendered the agreement unenforceable under Pennsylvania law.

the heightened specificity requirement of New Jersey law, but without attempting to mandate indemnification for the sole negligence of the indemnitee.

Union Roofing argues that even if both provisions are enforceable, the contract is ambiguous as to whether the provision regarding concurrent negligence applies in tandem with the provision regarding injuries to a subcontractor's employee, and that any such ambiguity is to be construed against RAI as the drafter. But I must also construe the contract so as to effectuate the intent of the parties, and the strained construction advanced by Union is an attempt to manufacture ambiguity where one does not truly exist. It is clear to me that these two provisions were intended to apply to both situations, whether occurring separately or simultaneously.

Evaluating a comparable—albeit not identical—indemnity clause, Presiding Judge Sabatino of New Jersey's Appellate Division rejected similar arguments that the clause was ambiguous and "internally inconsistent." *Estate of D'Avila ex rel. D'Avila v. Hugo Neu Schnitzer E.*, 442 N.J. Super. Ct. 80, 115 (App. Div. 2015). Finding the clause valid and enforceable, Judge Sabatino noted that the "only limitation that applies stems from the statute, N.J.S.A. 2A:40A–1, precluding an enforceable duty to indemnify a party that is solely negligent, not applicable here." *D'Avila*, 442 N.J. Super. Ct.at 115. Analogously, Union Roofing is correct that it cannot be required to indemnify RAI for injuries caused *solely* by RAI's own negligence, because such a provision would be unenforceable under New Jersey law. N.J. Stat. Ann. § 2A:40A-1. But that issue is not before me until such time as a jury returns a verdict.

The array of pleadings in this case presents a collage of alleged negligence comprised of the conduct of various parties. As a result, at this juncture, Union Roofing's Motion will be denied.

2. Breach of Contract Claim

Union Roofing was also joined under a breach of contract claim, and it seeks dismissal on the ground that it fulfilled its obligations under the subcontract as a matter of law when it named RAI as an additional insured.  This argument lacks merit because the contract itself draws no such distinction, and provides that "Subcontractor" shall "indemnify … and hold contractor harmless."  Union Roofing Subcontract at ¶ 18.  Furthermore, RAI contends that Union's insurer has provided only limited representation under a reservation of rights.  Under the literal terms of the agreement itself, Union Roofing undertook a duty of indemnity.  Though it is possible that its carrier might fully discharge that obligation on its behalf, that is by no means assured, rendering summary judgment as to this claim inappropriate as well.

### III.  Conclusion

Because I find that neither RAI nor Union Roofing is entitled to immunity from the claims against them as a matter of law, both Motions for Summary Judgment must be denied so that a jury may assess the liability of each Defendant and Third-Party Defendant.  An appropriate Order follows.

    /s/ Gerald Austin McHugh
United States District Judge